Andrew W. Stavros (8615)
Austin B. Egan (13203)
**STAVROS LAW P.C.**
11693 South 700 East, Suite 200
Draper, Utah 84020
Tel: 801.758.7604
Fax: 801.893.3573
andy@stavroslaw.com
austin@stavroslaw.com
*Attorneys for Plaintiff Delphine Etienne*

**IN THE UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DELPHINE ETIENNE,<br><br>　　Plaintiff,<br><br>vs.<br><br>ARUP LABORATORIES, INC., a Utah Corporation,<br><br>　　Defendant. | **COMPLAINT**<br><br>(JURY DEMAND)<br><br>Case No. 2:17-cv-00464-DAK<br><br>Judge Dale A. Kimball |

Plaintiff Delphine Etienne, by and through her attorney of record, brings this Complaint against Defendant ARUP Laboratories, Inc.

**PRELIMINARY STATEMENT**

Plaintiff brings this action for discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 USC § 2000e *et seq*. ("Title VII").

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Delphine Etienne ("Etienne" or "Plaintiff") is a resident of Salt Lake County, State of Utah.

1

2. Defendant ARUP Laboratories, Inc., ("Defendant" or "ARUP") is a Utah corporation with its principal office located at 500 Chipeta Way, Salt Lake City, Utah 84108.

3. Etienne has exhausted her administrative remedies prior to filing this action, having filed a timely charge with the Utah Antidiscrimination & Labor Division ("UALD") on or about March 7, 2016, and having obtained a notice of right to sue from the EEOC dated February 23, 2017 (received on or about February 28, 2017).

4. This Court has jurisdiction over Etienne's claims asserted herein pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331.

5. The employment practices alleged to be unlawful were committed in Salt Lake County, State of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division.

6. This action properly lies in the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) because claims asserted herein arose in this judicial district.

7. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

*Background*

8. Ms. Etienne has black skin, she was born in Haiti, and she speaks English with a Haitian accent.

9. ARUP is a clinical and pathology reference laboratory specializing in research and development.

10. At all times relevant to this action, Ms. Etienne was an "employee" within the meaning of Title VII, and ARUP was an "employer" within the meaning of Title VII.

2

11. On or about March 23, 2015, ARUP hired Etienne as "Technologist Trainee" in its Genomics Lab.

12. Ms. Etienne's duties and responsibilities as a Technologist Trainee included, but were not limited to: preparing blood specimens for processing; performing analytical processes (including DNA extraction, t-cell clonality, and BCR-ABL NGS testing); collecting, handling, and transporting specimens; calibration of various equipment and instruments; performing tests on samples; transcribing and inputting test results; and other quality assurance activities.

13. As a Technologist Trainee, Etienne was in a training position that was preparing her (or at least intended to prepare her) for obtaining ASCP (American Society for Clinical Pathology) certification within five years, and to advance Etienne into a Technologist position at ARUP.

14. Etienne worked under the supervision of Technologists and Medical Technologists.

15. On several occasions during her employment with ARUP, Etienne worked alongside Louise Robles ("Robles"), who was employed with ARUP as a Technician.

16. On several occasions in April and May of 2015, Robles referred to herself as a "slave master" and referred to Etienne as a "slave." Robles made these comments directly to Etienne or she said them loud in enough and in proximity to Etienne with intent that Etienne would hear the comments and understand them to be directed at her.

17. Ms. Robles also told Ms. Etienne, while in the Lab, "your kind is not welcome here."

18. In April 2015, Ms. Etienne complained about Robles' comments to Josh Ramney ("Ramney"), employed with ARUP as a Senior Technologist.

3

19. In May 2015, Ms. Etienne complained about Robles' comments to Jennifer Stocks ("Stocks"), employed with ARUP as a Technical Supervisor.

20. Ms. Robles' harassing comments continued and on several occasions thereafter, Ms. Robles derisively mimicked Ms. Etienne's Haitian accent in Ms. Etienne's presence. Ms. Robles also made disparaging remarks about Ms. Etienne's hair via text messages to other employees—Ms. Etienne wears her hair in a manner consistent with her identity as a black Haitian woman.

21. In June 2015, Ms. Etienne complained about Ms. Robles' comments and conduct to Terry Haslam ("Haslam"), employed with ARUP it its Employee Development/Human Resources departments.

22. Ms. Etienne made multiple requests to be trained in areas that would advance her career with ARUP. Her requests for training included, but were not limited to: solid tumor training, array training, and a categorical class. Completion of additional training would have resulted in advancing Etienne's career, including promotions, pay increases, and other employment benefits.

23. ARUP denied Ms. Etienne's requests for additional training and claimed Etienne lacked the intelligence and competency to attend such training. Ms. Etienne's supervisor, Ms. Miller, claimed that the training was "too complex" for Etienne.

24. However, ARUP permitted multiple other employees to attend such training (and trained those other employees more efficiently), and those other employees were white, were of U.S. national origin, and had less lab experience than Etienne.

25. Shortly after Ms. Etienne made her complaints to Ms. Stocks and Mr. Ramney, ARUP employee David Larsen became hostile to Etienne during training sessions, and refused to

train Etienne diligently or competently. Larsen also told Etienne that the equipment for the reagents and the arrays were "too expensive" to allow Etienne to train on that equipment any further.

26. ARUP technicians perform preparation work for running logs for blood sample processing. The technicians were assigned to perform this preparation work for Technologists and Technologist Trainees. After Ms. Etienne's complaints to Ms. Stocks, technicians refused to perform any preparation work for Etienne. Consequently, Ms. Etienne had to work much harder, take fewer breaks, work longer than her comparator white employees.

27. Additionally, technicians would perform preparation work for running logs for other white Technologists and Technologist Trainees (of U.S. national origin), but those same technicians would not perform preparation work for Ms. Etienne.

28. After Etienne raised her complaints, other ARUP employees refused to interact with Etienne in any way, they ignored Etienne and refused to answer her questions, and isolated Etienne in the Genomics Lab.

29. In late October 2015, Etienne met with Patty Miller (employed with ARUP as a "Group Manager" and was Etienne's direct supervisor), and complained that the working environment in the Genomics Lab—Robles' comments and the isolation from her co-workers—made Etienne feel like she had been put "through hell."

30. Also in late October 2015, Etienne met with Jackie Lohdefinck, an ARUP employee in the Human Resources department, and complained that she was being denied valuable training opportunities on the basis of her race, and likewise complained that she was being subjected to racially discriminatory treatment in the Genomics Lab.

31. On or about November 2, 2015, Ms. Etienne submitted a written complaint to ARUP's human resources and management team, including Ms. Miller, wherein she (again) made the following complaints:

- that Etienne was subjected to racial slurs made by Ms. Robles;

- she Etienne had been subjected to racial and national origin discrimination,

- that Etienne had been subjected to retaliation based on her complaints of racial and national origin discrimination;

- that the work environment in the lab had become hostile;

- that Etienne's supervisors and coworkers refused to train her or work alongside her because of her race and national origin;

- that Etienne's coworkers were laughing at her, ridiculing her, and bullying her;

- that Etienne's coworkers refused to provide her with any assistance on arrays;

- that a coworker told Etienne that nobody wants to train her;

- that Etienne's supervisor did not take her complaints seriously and instead "covered up" for her coworkers' conduct; and

32. On or about December 28, 2015, Ms. Etienne met with Johanna Barraco (the Director of ARUP's Human Resources Department) and raised the same concerns she expressed in her letter of November 2, 2015.

33. In retaliation for Etienne's complaints, ARUP issued performance "variances" to Etienne. A variance is a written criticism of an ARUP employee's performance and is placed in the employee's file.

34. On or about February 17, 2016, ARUP issued a "Counseling Record" to Etienne, wherein ARUP accused Etienne of a "sample switch" on January 21, 2016, and accused Etienne of a "cleaning protocol" error on January 25, 2016.

35. That same day, February 17, 2016, Etienne met with Ms. Miller, Ms. Barraco, and Martha Bale (employed with ARUP as a "Senior Technical Director") to discuss the counseling record. Upon being confronted with the allegations in the counseling record, Etienne claimed that David Larsen (employed with ARUP as a Technologist) had switched bottles of solution with intent to make it appear as if Etienne had made a mistake.

36. Rather than investigate Etienne's concerns of sabotage, ARUP terminated Etienne's employment that same day, February 17, 2016.

37. As a direct result of ARUP's unlawful actions set forth herein, Etienne has suffered lost wages, harm to her future earning capacity, severe emotional distress, and other consequential losses.

**FIRST CAUSE OF ACTION**
**(Racial and National Origin Discrimination in Violation of Title VII)**

38. Ms. Etienne incorporates the allegations in the preceding paragraphs as if fully set forth herein.

39. At all times during her employment with ARUP, Etienne performed her duties and responsibilities competently, effectively, and in accordance with the terms of her employment.

40. Ms. Etienne was subjected to disparate treatment on the basis of her race and/or national origin. White comparator employees, who are of U.S. national origin, were provided preferential and more favorable treatment in the terms and conditions of their employment.

41. Ms. Etienne was denied valuable training opportunities on the basis of her race

and/or her national origin.

42. ARUP terminated Etienne's employment on the basis of her race and/or national origin.

43. Etienne has suffered damages caused by ARUP's unlawful discrimination.

44. Etienne seeks recovery of all back wages, future wages, consequential losses, special damages, and compensatory damages caused by ARUP's unlawful discrimination.

45. Etienne also seeks recovery of her reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

46. Ms. Etienne incorporates the allegations in the preceding paragraphs as if fully set forth herein.

47. At set forth herein, Etienne complained to ARUP's management and human resources department that she was being subjected to unlawful harassment on the basis of her race and/or her national origin.

48. At set forth herein, Etienne complained to ARUP's management and human resources department that she was being subjected to unlawful discrimination on the basis of her race and/or her national origin.

49. Ms. Etienne's complaints were made in April, May, June, October, November, and December 28, 2015.

50. Ms. Etienne's complaints were based on her reasonable belief that she was being subjected to unlawful harassment on the basis of her race and/or national origin, and that she was being subjected to unlawful discrimination on the basis of her race and/or national origin.

51. Etienne's complaints were protected activity under Title VII.

52. ARUP subjected Etienne to adverse employment actions because of her protected activity. These adverse employment actions included denying Etienne valuable training opportunities to advance her career, and the termination of Etienne's employment on or about February 17, 2016.

53. Etienne has suffered damages caused by ARUP's unlawful retaliation.

54. Etienne seeks recover of all back wages, future wages, consequential losses, special damages, and compensatory damages caused by ARUP's unlawful retaliation.

55. Etienne also seeks recovery of her reasonable attorney's fees and costs.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Etienne demands a trial before a jury of her peers.

## CONCLUSION & REQUEST FOR RELIEF

WHEREFORE, Plaintiff Delphine Etienne requests judgment and relief against Defendant ARUP Laboratories, Inc. as follows:

(1) For all back wages, future wages, and other consequential damages caused by ARUP's violations of Title VII;

(2) For compensatory damages to compensate Ms. Etienne for her severe emotional distress caused by ARUP's violations of Title VII;

(3) To the extent ARUP's violations of Title VII were committed willfully, intentionally, or recklessly, Etienne seeks an award of punitive damages;

(4) For prejudgment and post-judgment interest, as applicable;

(5) For Etienne's attorney's fees and costs of suit, including expert witness fees; and

(6) Such further and additional legal or equitable relief as the Court deems appropriate.

Dated this 22nd day of May, 2017.

                              STAVROS LAW P.C.

                              /s/ Austin B. Egan
                              Austin B. Egan
                              *Attorney for Delphine Etienne*