IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DELPHINE ETIENNE,<br><br>　　　　　Plaintiff,<br>v.<br><br>ARUP LABORATORIES,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00464<br><br>District Judge Dale A. Kimball |

　　　　Plaintiff Delphine Etienne brings this lawsuit against ARUP alleging that she was terminated because of her race and national origin. Before the court is Defendant ARUP Laboratories' Motion for Summary Judgment.

## FACTUAL BACKGROUND

　　　　In March of 2015, Etienne, who is black and of Haitian descent, was hired to work at ARUP in its Genomics Lab as a Technologist Trainee. Etienne's work in the Genomics Lab focused on the analysis of blood and tissue samples from fetuses and cancer patients to assess disease states. As a Technologist Trainee, Etienne prepared blood and tissue samples for testing, performed and documented test results, and trained to become a Technologist.

　　　　Etienne alleges that on several occasions in April and May of 2015 a coworker used the word "slave" at work and referred to herself as a "slave master." Etienne also alleges that this coworker told her that her kind is not welcome here.

　　　　On or about May 5, 2015, Etienne complained to her supervisor at the time, Jennifer Stocks, about this alleged conduct. Stocks investigated the complaint, was informed that the coworker had said to another employee (not Etienne) that she was a "slave to the lab," counseled

1

this coworker not to use such terms at work and understood that the coworker apologized to Etienne and that the matter was otherwise resolved.

Thereafter, Etienne alleges that ARUP denied her training opportunities either because of race and national origin or in retaliation for her complaint. ARUP disputes this assertion and argues that Etienne received training that is comparable to training received by other Technologist Trainees who are white, of American national origin, and who did not complain about discrimination.

Etienne made additional complaints from July 30, 2015 to December 28, 2015, about alleged coworker mistreatment and perceived unfairness in training. Each time ARUP investigated Etienne's concerns. Etienne alleges that her complaints about discrimination caused ARUP to retaliate by issuing "variances" to her. ARUP issued "Variance Discussion Forms" to employees to document and correct mistakes. ARUP issued two Variance Discussion Forms to Etienne – one on October 21, 2015 and the other on January 11, 2016. Both variances concerned the same test. Moreover, during the time that Etienne was employed ARUP also issued Variance Discussion Forms to ten other employees in its Genomics Lab, including multiple variances to two other employees. None of the other employees complained about discrimination, and most of them were white, and of American national origin.

After ARUP issued its January 11, 2016 Variance Discussion Form, Etienne made two additional mistakes on the same test in January of 2016. Including Etienne's prior two variances, this was now a total of four mistakes on the same test. Patty Miller, Etienne's supervisor at the time, decided that Etienne should receive a written warning for her continued errors. Miller and Johanna Barraco, ARUP's Director of Human Services, met with Etienne to provide counseling to her about the additional mistakes. In response to the counseling, Etienne stated that she was

not responsible for the errors because she had witnessed a coworker try to sabotage her work. Specifically, Etienne said that she saw a coworker, on multiple occasions, mix up Etienne's testing solutions to cause her to make a mistake.

Miller and Barraco demanded that Etienne name the coworker who had allegedly sabotaged her work. Etienne refused. Miller and Barraco gave Etienne 24 hours to reconsider her decision not to name the person she accused of sabotage. The next day Miller and Barraco asked Etienne again to name the coworker. Miller and Barraco terminated Etienne because she would not name the person who she accused of sabotaging her testing.

In the days that followed Miller investigated the matter by interviewing employees in the Genomics Lab to see if they had witnessed the type of misconduct that Etienne alleged. The employees all denied observing tampering or sabotage.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion of summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (quoting *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008)). The movant must prove that no genuine issue of material fact exists for trial. *See* Fed. R. Civ. P. 56(a); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Accordingly, to survive summary judgment, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *Smart*, 678 F.3d at 858 (quoting *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)).

## DISCUSSION

ARUP seeks summary judgment arguing that: 1) Etienne was fired because she claimed a coworker sabotaged her test results but then refused to name the alleged saboteur; 2) Etienne cannot show that she was treated differently than similarly situated employees; 3) Etienne cannot establish that ARUP's stated reason for her termination was a pretext for discrimination; 4) Etienne was not denied training opportunities for discriminatory or retaliatory reasons; 5) Etienne cannot show that ARUP issued variances to her in retaliation for her discriminatory complaints; 6) Etienne is not entitled to punitive damages against ARUP.

1) **Etienne Was Fired Because She Claimed a Coworker Sabotaged Her Test Results But Then Refused to Name the Alleged Saboteur.**
On February 16, 2016, Etienne's supervisors, Miller and Barraco, met with Etienne to issue a counseling record. Etienne made several mistakes on the same tests prior to her supervisors deciding to issue a counseling record. Etienne's supervisors previously issued her several variances because of prior mistakes she made. These mistakes sometimes had serious consequences such as an incident where Etienne mistakenly threw away a cancer patient's tissue sample.

Variances are typically the lowest level of employee discipline at ARUP. Because Etienne received multiple variances, and because she continued to make similar errors on the same tests, her supervisors decided to issue a counseling record. A counseling record is considered a low level of discipline at ARUP and typically doesn't carry any consequences. Etienne's supervisors chose to issue her a counseling record as opposed to requiring her to change departments, as ARUP required of other employees who made repeated mistakes on tests.

While Miller and Barraco were issuing the counseling record, Etienne refused to take responsibility for mistakes on her tests and instead accused an unnamed co-worker of sabotaging

4

her test results. Etienne's supervisors repeatedly ordered her to tell them who sabotaged her results, but she refused. Etienne's supervisors gave her 24 hours to name the person she accused of sabotage, but she again refused when she was called into her supervisor's office the next day. Miller and Barraco decided that Etienne did not take responsibility for her mistakes during her counseling record, accused a coworker of sabotaging her testing, and then refused to name the coworker when ordered. Citing this reason, Miller and Barraco terminated Etienne from her position.

2) **Etienne Cannot Show that She Was Treated Differently Than Other Similarly Situated Employees.**

Etienne counters that she was terminated because of her race and/or in retaliation for her complaints of racial discrimination. The applicable legal standards for Etienne's discrimination claim are set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the burden shifting scheme, Etienne must first establish that she belongs to a protected class, that she was doing satisfactory work, that she was subjected to adverse action by the employer, and that she was treated less favorably than others outside the protected class. *See Ortiz v. Norton*, 254 F.3d 889, 894 (10th Cir. 2001). *See also Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1012 (10th Cir. 2002).

ARUP argues that Etienne cannot show that her job performance was satisfactory at the time of her termination. It is undisputed that Etienne accused an unnamed coworker of sabotage on February 16, 2016, and that she refused to identify the alleged coworker when Barraco and Miller demanded that she do so. It is also undisputed that when Etienne met again with Barraco and Miller on February 17, 2016, Barraco and Miller demanded again that she identify her alleged saboteur. Etienne admitted at her deposition that she told the Utah Antidiscrimination and Labor Division investigator that when she failed to give a name of the alleged saboteur she

was terminated. Accordingly, Etienne cannot establish a prima facie case because she cannot show that her job performance was satisfactory at the time of her termination.

Further, Etienne cannot establish that she was treated differently than similarly situated employees. In 2015 and 2016, ARUP terminated the employment of four other Technologists for misconduct issues. Etienne argues that Richendollar, a Technologist Trainee who is white and of American national origin, engaged in conduct of comparable seriousness and ARUP did not terminate her employment.

There is no dispute that Richendollar made recurring workplace mistakes. ARUP issued variances and a counseling record to Richendollar because of these mistakes. Because of Richendollar's mistakes, ARUP told her that she would need to transfer to another department or lose her job at ARUP. Etienne also made recurring workplace mistakes and received variances and a counseling record. However, ARUP never required Etienne to transfer departments. In this way Etienne was treated more favorably than Richendollar when the two made similar mistakes because Etienne was not required to transfer departments.

Etienne cannot show that she was treated less favorably than similarly situated employees because the record shows that she was treated more favorably when comparing similar conduct. ARUP's stated reason for terminating Etienne was not because of her mistakes on tests. ARUP claims that Etienne was terminated because she accused coworkers of sabotaging her work and then refused to name the alleged saboteur. Because no other employees accused coworkers of sabotaging their testing, including Richendollar, there is no comparable conduct engaged in by other employees to compare to Etienne's conduct. Accordingly, Etienne cannot establish that her job performance was satisfactory at the time of her termination and has therefore failed to prove a prima facie case of discrimination.

### 3) Even If Etienne Can Establish a Prima Facie Case of Discrimination or Retaliation, She Has Not Come Forward with Evidence of Pretext.

If Etienne can establish a prima facie case of discrimination or retaliation then ARUP must "articulate a legitimate, nondiscriminatory reason" for her employment termination. *Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1012 (10th Cir. 2002). ARUP contends that its nondiscriminatory reason for terminating Etienne was her failure to provide a name of the person she accused of sabotaging her test results.

Once ARUP states a nondiscriminatory reason for the adverse employment action the burden shifts to the Plaintiff to show that ARUP's "explanation for its action was merely pretext" for discrimination or retaliation. *Neal v. Roche*, 349 F.3d 1246, 1248 (10th Cir. 2003). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the [employer's articulated] reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Etienne cannot show that ARUP's stated reason for her employment termination is unworthy of belief. Moreover, it is not enough to disbelieve ARUP, Etienne must still come forward with credible evidence that the real reason for her termination was discrimination or retaliation. No such evidence exists. On February 16, 2016, Miller and Barraco met with Etienne to issue a counseling record and Etienne refused to take responsibility for the mistakes made on her tests. Rather, Etienne asserted that a coworker sabotaged her testing. Miller and Barraco demanded Etienne to disclose the alleged saboteur, but Etienne refused. On February 17, 2016, Miller and Barraco again met with Etienne and ordered her to name the alleged saboteur, to

7

which she again refused. Accordingly, Etienne has not come forward with evidence that ARUP's stated reason for the termination based on Etienne's refusal to name a person she accused of sabotaging her test results was false and merely a pretext for discrimination or retaliation. Etienne has therefore failed to produce evidence of a dispute of material fact showing that ARUP's stated reason for termination was based on discrimination or retaliation.

Etienne claims that Barraco told Etienne while terminating her that it was insensitive of her to have complained about her coworker referring to her as a slave. Etienne argues that Barraco's statement was evidence that she was terminated in retaliation for complaining about possible discrimination.

To establish a prima facie case of retaliation, Etienne must show that "there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). The United States Supreme Court has held that this causal connection requires "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Even assuming Barraco made the statement that Etienne was being insensitive for complaining about discrimination, there is no evidence that discrimination or retaliation was the but-for cause for her termination. The evidence shows that Etienne made multiple reports of discrimination over the course of her employment and ARUP investigated each claim and spoke to the coworkers whom Etienne claimed made discriminatory statements. The evidence also shows that ARUP intended to issue a counseling record to Etienne at the February 16, 2016, meeting and that it was not planning on terminating her. Miller and Barraco ordered Etienne to provide the name of the person she accused of sabotaging her work at the February 16, 2016

8

meeting. The next day Miller and Barraco again ordered Etienne to provide the name of the person she accused of sabotage. Etienne refused. The evidence shows that the but-for cause of Etienne's termination was her failure to provide the name of the person she accused of sabotage. Accordingly, Etienne has not created a dispute of material facts that ARUP's stated reason for her termination was a pretext for discrimination or retaliation.

4) **Etienne Was Not Denied Training Opportunities for Discriminatory or Retaliatory Reasons.**

Etienne alleges that she was denied valuable training opportunities based on her race and/or national origin. Etienne alleges that employees who were white and of U.S. national origin could attend training that was allegedly denied to her. Etienne also alleges that ARUP denied her training in retaliation for her complaints of discrimination.

To prevail on either theory, Etienne must show, among other things, "that similarly situated comparators were treated differently for the same conduct." *Behendwa v. Univ. of Colorado at Boulder*, 214 F. App'x 823, 828 (10th Cir. 2007). A similarly situated individual is one who: (1) has dealt with the same supervisor; (2) is subjected to the same work standards; and (3) has engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id*.

Etienne was given an initial six-month training plan when she started her employment at ARUP in its Genomics Lab as a Technologist Trainee – the same training plan received by the Technologist Trainees who started work around the same time as Etienne. Bird and Richendollar are the only adequate comparators because by November 2015 ARUP completely revamped its training process.

Although Etienne did not complete all the training listed in her initial training plan by the six-month completion goal, neither did Bird or Richendollar. In fact, ARUP removed training

from Richendollar's training plan because ARUP was already training Etienne on these subjects and ARUP was not able to train Etienne and Richendollar on the same subjects at the same time. Etienne therefore received training in microarrays, BCRABL, and T Cells during her six-month training plan and Richendollar did not. Such differences in training are common at ARUP because it is common for Technologist Trainees not to complete all their initial training within their initial six-month goal. Thus, Etienne received some training that other Technologist Trainees did not receive, and other Technologist Trainees received some training that Etienne did not receive.

Etienne alleges in her Complaint that ARUP denied her solid tumor training, array training, and a categorical class. During her deposition, Etienne acknowledged that those allegations are not true. Etienne received training in June of 2015 and started solid tumor training in January of 2016. Etienne testified that ARUP had changed its array procedure in the fall of 2015 and that she was denied training on these new procedures. However, ARUP did not provide training on its new array procedures to anyone beginning November of 2015 and extending into 2016.

Etienne also acknowledges that ARUP did not deny her participation in the "categorical" class – she just could not take this class during her first year. Etienne was scheduled to attend this class in the spring of 2017. Etienne points to Technologists Davin Larsen and Scott Pew, who were both allowed to take the categorical class before they worked for ARUP for a full year. However, neither of them were similarly situated to Etienne. Here, Etienne's supervisor Miller decided that Etienne could not take the categorical class her first year. Miller has never permitted anyone to take the categorical class during their first year of employment. A different ARUP supervisor, Jennifer Stocks, made the decision for Larsen and Pew to take the class. Stocks

allowed Larsen to take the categorical class early because Larsen has a master's degree in the molecular field, unlike Etienne. Stocks allowed Pew to take the categorical class early because Pew had accelerated through his initial training at an unprecedented pace and completed all his competencies within six months. Etienne cannot show a meaningful discrepancy from the training she received and what other similarly situated employees received. Accordingly, Etienne cannot show that she was denied training opportunities based on discrimination or retaliation.

5) **Etienne Cannot Show that ARUP Issued Variances to Her in Retaliation for Her Discriminatory Complaints**

As described above, to make a prima facie retaliation case Etienne must demonstrate: "1) [she] engaged in protected opposition to discrimination; 2) [she] suffered an adverse employment action; and 3) there [was] a causal connection between the protected activity and the adverse employment action." *Petersen*, 301 F.3d at 1188. In retaliation cases, the Tenth Circuit will "consider acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" as an adverse employment action. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004). Although disciplinary actions, such as written warnings, may sometimes constitute adverse employment action, such reprimands "will only constitute adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment – for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).

Etienne received two Variances from ARUP – one on October 21, 2015 and another on January 11, 2016. Barraco testified for ARUP that the "intent of a variance is to correct a behavior" to encourage employees who made the mistake to do "root cause analysis about why

11

that error occurred and what they're going to do to correct it." ARUP's practice is to wait until an employee has three or more variances on the same test before entering even the lowest level of its progressive discipline policy.

Etienne has not established that a Variance constitutes an adverse employment action. She has failed to come forward with evidence showing how receiving Variances harmed her employment. Further, ARUP has issued Variances to other employees who made errors in their testing. Etienne does not dispute that there were errors in her testing. She only disputes whether she made those errors, or whether her results were sabotaged. Etienne therefore also fails to show that was a causal connection between the alleged adverse employment action of receiving a Variance and discrimination or retaliation. Accordingly, Etienne's claim for discrimination or retaliation based on ARUP issuing her Variances fails.

6) **Etienne's Claim for Punitive Damages Fails.**
Etienne asserts a claim for punitive damages. "A Title VII plaintiff is entitled to punitive damages if [her] employer engaged in discriminatory practices with malice or with reckless indifference to [her] federally protected rights." *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1201 (10th Cir. 2015). ARUP argues that summary judgment is appropriate on Etienne's punitive damages claim. Etienne did not oppose summary judgment on the punitive damage claim. Accordingly, Etienne's claim for punitive damages fails.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in its entirety. (Dkt. No. 19).

Dated this 10th day of December 2018.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge